UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIMAL O.,<br><br>Petitioner,<br><br>v.<br><br>RON MURRAY, WARDEN OF MESA VERDE DETENTION CENTER, et al.,<br><br>Respondents. | No. 1:26-cv-03930-TLN-CSK<br><br>A # 221-311-950<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Himal O.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) The matter is fully briefed. (ECF Nos. 6, 7.) For the reasons set forth below, the Petition is GRANTED and the Court orders Petitioner's IMMEDIATE RELEASE.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on December 26, 2024. (ECF No. 1-2 at 8.) U.S. Customs and Border Patrol encountered Petitioner and placed him in expedited removal proceedings the next day. (*Id.* at 12–13; ECF No. 6 at 17.) He was thereafter released on his own recognizance. (ECF No. 1 at 12; ECF No. 6 at 2.) In the time that followed, Petitioner filed an application for asylum and an I-360 petition for special immigrant juvenile status. (ECF No. 1 at 12, 14; ECF No. 1-2 at 39.) Petitioner's I-360 petition is in the final stage of approval. (ECF No. 1 at 14.) Petitioner submits that he fully complied with all requirements for applying for asylum relief including appearing at immigration appointments when requested. (*Id.* at 19.) Petitioner has no criminal history. (*Id.*)

On September 12, 2025, U.S. Citizenship and Immigration Services ("USCIS") terminated Petitioner's asylum application and scheduled him for a credible fear interview. (*Id.* at 13; ECF No. 6 at 36.) Petitioner reported for his credible fear interview with USCIS on October 7, 2025. (ECF No. 1-2 at 14.) A USCIS asylum officer found Petitioner did not have a credible fear of torture or persecution. (ECF No. 6 at 34–35.) Petitioner requested an immigration judge ("IJ") review that finding. (*Id.* at 35.) He was then taken into custody and served a Form I-200 warrant for his arrest. (*Id.* at 23–24; ECF No. 1-2 at 14.) On October 14, 2025, an IJ found Petitioner had established a reasonable possibility of persecution and vacated the asylum officer's negative credible fear determination. (ECF No. 1-2 at 17.) Petitioner was not released from custody. (ECF No. 1 at 14.) On November 5, 2025, Petitioner was issued a Notice to Appear. (ECF No. 1-2 at 8.) On December 23, 2025, Petitioner filed an application for asylum and withholding of removal. (*Id.* at 24–37.)

Petitioner requested a custody re-determination hearing and on January 7, 2026, an IJ denied his request for lack of jurisdiction upon finding Petitioner is not a member of the "Bond Eligible" class from *Maldonado-Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). (ECF No. 1-2 a 4-3.) Petitioner then filed a petition for writ of habeas corpus in this District. *See O. v. Murray*, No. 1:26-cv-00169-WBS-JDP (E.D. Cal. Jan. 9, 2026), Dkt. No. 1. Senior District Judge William B. Shubb denied the petition after concluding Petitioner "[did] not possess a right

under the Due Process Clause to a bond hearing prior to being re-detained by immigration authorities." *O.*, No. 1:26-cv-00169-WBS-JDP (E.D. Cal. May 19, 2026), Dkt. No. 16.

Petitioner has now been detained without a bond hearing for over thirteen months. He challenges the lawfulness of his prolonged civil immigration detention and seeks immediate release. (ECF No. 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his prolonged immigration detention without a bond hearing violates the Fifth Amendment Due Process Clause.[2] (ECF No. 1 at 20.) In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii)[3] because the IJ vacated the negative credible fear finding and determined Petitioner had established a credible fear. (ECF No. 6 at 2–5.) However, Respondents acknowledge this Court has previously found § 1226(a) to apply in similar circumstances. (*Id.* at 3.)

---

[2] Petitioner also argues his detention violates the Administrative Procedure Act. (ECF No. 1 at 21.) As the Court finds Petitioner is entitled to habeas relief on his Fifth Amendment claim, the Court declines to address Petitioner's statutory claim in favor of judicial economy.

[3] Unless otherwise noted, citations to statute refer to Title 8 of the United States Code.

The Court first addresses the government's detention authority before turning to Petitioner's Fifth Amendment claim.

A. Detention Authority

The Immigration and Nationality Act ("INA") generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings. Expedited removal proceedings are governed by § 1225. As relevant here, § 1225(b)(1) provides that if an immigration officer determines that a noncitizen "who is arriving in the United States or is described in clause (iii) is inadmissible," the officer shall order them removed from the United States without further hearing or review. 8 U.S.C. § 1225(b)(1)(A)(i). However, if the noncitizen indicates an intent to apply for asylum or fear of persecution, the officer shall refer them for a credible fear interview. *Id.* § 1225(b)(1)(A)(ii). If the noncitizen is found to have a credible fear of persecution, they are detained for further consideration of their application for asylum. *Id.* § 1225(b)(1)(B)(ii). If the noncitizen is found not to have a credible fear of persecution and they request prompt review, they are detained pending a final determination of credible fear and, if found not to have such a fear, until removed. *Id.* § 1225(b)(1)(B)(iii)(IV).

Standard removal proceedings, or "section 240 proceedings," are codified at § 1229a. *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025). For those in standard removal, apprehension and detention during the pendency of these proceedings is governed by § 1226(a) and (c). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the government has broad discretion whether to release or detain the individual. *Id.* However, § 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. While not relevant here, § 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)" based on criminal history and related considerations. *Jennings*, 583 U.S. at 289 (emphasis in original).

According to the government's documents, Petitioner was initially placed in expedited removal proceedings when he entered the United States. (ECF No. 6 at 17, 28.) While in Border Patrol custody, he did not express an intention to apply for asylum or fear of persecution or torture. (*Id.*) Petitioner was ordered removed. (*Id.*) The record is unclear as to why he was not removed pursuant to the expedited removal order, but the parties agree Petitioner was subsequently released into the United States and lived freely for approximately one year. (*Id.* at 2; ECF No. 1 at 12.)

When Petitioner was re-detained following his credible fear interview, he was issued an I-200 warrant made pursuant to § 236 of the INA, which is codified at § 1226.[4] (ECF No. 6 at 24.) After the IJ vacated the negative credible fear determination, Petitioner was served a Notice to Appear stating that he is in removal proceedings under § 240 of the INA. (*Id.* at 12.) Thus, while Petitioner was initially placed in expedited removal proceedings, the record shows he was since placed in standard removal proceedings and was re-detained under the authority of standard removal proceedings. His detention is therefore governed by the discretionary detention scheme of § 1226(a), and he cannot simultaneously be subject to mandatory detention under § 1226(b)(1). *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (finding it is not possible for petitioner to be subject to both detention regimes simultaneously as they are "facially inconsistent").

Respondents argue Petitioner was re-detained under § 1225(b)(1)(B)(iii)(IV) following the asylum officer's negative fear finding, and after the IJ vacated that findings and determined Petitioner had established a credible fear, his detention authority changed to § 1225(b)(1)(B)(ii). (ECF No. 6 at 2.) However, these assertions find no support from the record. First, Respondents cite no evidence for their position on Petitioner's initial detention, and to the contrary, the I-200 warrant issued the day of Petitioner's arrest cites § 236 of the INA, which is codified at § 1226. (ECF No. 6 at 12.) Second, while § 1225(b)(1)(B)(ii) authorizes the detention of noncitizens in expedited removal found to have a credible fear of persecution pending further consideration of

[4] The warrant also cites § 287 of the INA, which is codified at 8 U.S.C. § 1357 and defines the powers of immigration officers and employees.

their asylum applications, it is unclear how the statute squares with the facts presented here. USCIS terminated Petitioner's asylum application on September 12, 2025, the IJ found Petitioner had established a reasonable possibility of persecution on October 14, 2025, and Petitioner re-applied for asylum on December 23, 2025. Thus, at the time Respondents claim the detention authority of § 1225(b)(1)(B)(ii) was triggered — when the IJ rendered their decision — Petitioner had no asylum application pending consideration. Respondents do not claim Petitioner was automatically considered to have a pending application at that point, and the fact that he submitted a new application two months later suggests he was not. On this record, the only documented authority for Petitioner's re-detention references standard removal proceedings. The Court therefore finds Petitioner's detention is governed by § 1226(a) and he is entitled to the procedural safeguards that statute provides.

B. Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

*Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on recognizance was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Respondents do not claim Petitioner violated the terms of his release. Accordingly, the Court finds Petitioner developed a substantial liberty interest protected by the Fifth Amendment in the time he was allowed to live freely following his release from immigration custody. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding the government's actions allowing petitioner to remain in the community strengthened his liberty interest). Even if he is ultimately removable, or his liberty could be revoked, Petitioner still maintains a protected liberty interest. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

*ii. Process Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to a post-deprivation bond hearing.[5]

---

[5] Senior District Judge William B. Shubb previously concluded Petitioner "[did] not possess a right under the Due Process Clause to a bond hearing *prior* to being re-detained by immigration authorities." O., No. 1:26-cv-00169-WBS-JDP (E.D. Cal. May 19, 2026), Dkt. No. 16 (emphasis added). The Court now considers only whether Petitioner possesses a right under the Due Process Clause to a *post-deprivation* bond hearing.

First, as explained above, Petitioner has a significant private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. To the contrary, Petitioner has never been found to pose a danger or a flight risk, he has no criminal history, and he has an interest in continuing to appear at future immigration hearings while he pursues asylum relief. The risk that Petitioner is being detained without proper justification is therefore exceedingly high.

Finally, the government's interest in continuing to detain Petitioner without a hearing is low, and the effort and cost required to provide him with procedural safeguards are minimal. Custody re-determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. While the government certainly has an interest in immigration enforcement, Respondents do not contend that this or any other interest is served by continuing to detain Petitioner without process.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive a hearing before a neutral decisionmaker to determine whether his continued detention was justified. He has now been detained for over thirteen months without that process. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Himal O. (A# 221-311-950) from custody on the same conditions of his prior release. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents shall file a **notice of compliance** with this provision of the Court's Order within **two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's motion for temporary restraining order (ECF No. 4) is DENIED as moot.

4. Respondents' motion to dismiss (ECF No. 6) is DENIED.

5. **The Clerk of Court is directed to serve Mesa Verde ICE Detention Center with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE